**Jane ROE, John Doe, Inc., and Consenting Adults Telephone Rights Association, Plaintiffs,**

v.

**Edwin MEESE, III, Attorney General of the United States, and Federal Communications Commission, Defendants.**

**No. 88 Civ. 4420 (MJL).**

United States District Court, S.D. New York.

July 20, 1988.

Ennis, Friedman & Bersoff by Bruce J. Ennis, Jr., David W. Ogden, Washington, D.C., and Lankenau, Kovner & Bickford by Richard D. Emery, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty. S.D. of N.Y. by Michael D. Pinnisi, Asst. U.S. Atty., New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Plaintiffs Jane Roe, John Doe, Inc., and the Consenting Adults Telephone Rights Association challenge the constitutionality of 47 U.S.C. § 223(b), as amended by the "Telephone Decency Act" earlier this year. The amended statute bans "indecent" and "obscene" interstate telephone communications for commercial purposes. The plaintiffs are engaged in the business of providing live telephone conversations that are paid for in advance by credit card. These conversations are generally, at least in part, sexual in nature.

Plaintiffs request that this Court preliminarily enjoin enforcement of the statute while this action is pending and permanently enjoin enforcement of the statute as to conversations occurring while the requested preliminary injunction is in effect.

For the reasons set forth below, the motion is granted in part and denied in part.

## DISCUSSION

*Standing*

■ Before this Court considers plaintiffs' preliminary injunction motion, we must determine whether they have standing to bring suit. Defendants claim that plaintiffs can prove no actual or threatened injury because they can only speculate how and whether the legislation could be enforced against them.

The Supreme Court recently held that "[t]o bring a cause of action in a federal court requires that plaintiffs establish at ... minimum an injury in fact." *Virginia v. American Booksellers Ass'n. Inc.*, — U.S. ——, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988). The Court, "unconcerned by the pre-enforcement nature of th[e] suit," further held that the injury in fact "requirement is met [when] ... plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them ... [and] the alleged danger of th[e] statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution." *Id.*

We find that, despite this suit's pre-enforcement posture, plaintiffs have standing to challenge the statute. The legislation at issue is directly aimed at plaintiffs' industry and plaintiffs have alleged a well-founded fear that this legislation will be enforced against them. In addition, one of plaintiffs' substantive claims concerns the chilling effect of the legislation on expression protected by the First Amendment. As such, this Court finds that plaintiffs meet the standing requirements.

*Preliminary Injunction*

The requirements for a preliminary injunction in this Circuit are met when a plaintiff shows "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Kaplan v. Board of Education of the City School District of the City of New York*, 759 F.2d 256, 259 (2d Cir.1985).

*Irreparable Harm*

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1975). Plaintiffs contend that if the statute becomes effective they will be faced with either abandoning their constitutional right to engage in expressive activity or risking a criminal prosecution and large civil and criminal penalties. As there are no bright lines separating protected from unprotected speech, speakers who tread in areas of uncertainty must "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958), with the likely result that free exercise of First Amendment rights will be inhibited. On this basis, plaintiffs satisfy the first of the requirements for a preliminary injunction, by demonstrating that the effect of this statute will be a measurable loss of their First Amendment freedom.

Next, this Court must look to the substance of plaintiffs' claims to consider (1) the likelihood of success on the merits, and (2) whether there exists sufficiently serious questions to make them a fair ground for litigation, and a balance of the hardships tipping decidedly toward the plaintiff.

*"Indecent" Expression*

■ This Court finds that plaintiffs are likely to succeed on the merits of their claims concerning "indecent" telephone communications. The Second Circuit has held that expression which does not qualify as "obscene" is protected by the First Amendment. *Carlin Communications, Inc. v. F.C.C.* ("Carlin III"), 837 F.2d 546, 560 (1988).

The legislative history of the "Telephone Decency Act" shows that the ban on "indecent" telephone expression was based on the Supreme Court's ruling in *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). 134

Cong.Rec. H1692 (daily ed. April 19, 1988) (Memorandum of Law in Support of H.R. 1786, "Telephone Decency Act"). *Pacifica* is also the basis of defendants' argument in support of the legislation's regulation of "indecent" speech. The *Pacifica* court upheld Federal Communications Commission ("F.C.C.") restrictions on radio broadcasts of "indecent" speech. Defendants analogize the radio broadcasts regulated by *Pacifica* to the private telephone communications at issue here, and claim that if plaintiffs cannot prove their ability to screen minors' access to indecent telephone messages, "they must concede ... that *Pacifica*'s indecency standards should be applicable to plaintiffs' business." Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction at 23. We disagree.

The Supreme Court has stressed the narrowness of its *Pacifica* holding, limiting the case to its particular set of facts: "Our decisions have recognized that the special interest of the Federal Government in regulation of the broadcast media does not readily translate into a justification for regulation of other means of communication." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 74, 103 S.Ct. 2875, 2884, 77 L.Ed.2d 469 (1982). Further, the Second Circuit has specifically distinguished private telephone conversations from the broadcast media, holding that "the *Pacifica* decision does not justify the regulation of indecent telephone messages." *Carlin III*, 837 F.2d at 560.

The *Carlin III* court considered the constitutionality of 47 U.S.C. § 223(b) prior to the challenged amendment. The previous version of the statute purported to regulate "indecent" and "obscene" telephone expression, but only if such communication was transmitted to minors or unconsenting adults. That Court held that "[w]ere the term 'indecent' to be given meaning other than *Miller* obscenity[1] ... the statute

---

**1.** The *Miller* obscenity test asks whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest ... [whether] the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and ... [whether] the work taken as a whole, lacks serious literary, artistic, political or scientific value.

would be unconstitutional." *Carlin III,* 837 F.2d at 560.

The statute considered in *Carlin III* did not directly prohibit "indecent" communications as to consenting adults; it merely indirectly burdened the access of consenting adults to such communications. The current version of 47 U.S.C. § 223(b) more heavily burdens First Amendment rights because it directly prohibits "indecent" communications to consenting adults. Therefore, this Court will likely find that the term "indecent" as used in the current amended version of 47 U.S.C. § 223(b) must be interpreted to include only that expression which meets the *Miller* standard of obscenity.

Plaintiffs contend that this Court should preliminarily enjoin enforcement of the entire statute citing the likely unconstitutionality of its ban on "indecent" speech. They direct this Court's attention to the fact that Congress specifically declined to alter the language of the statute to more readily permit severance as demonstrative of Congress' preference that the statute stand or fall as a unit. Congress made this decision despite advice from both the Justice Department and the F.C.C. general counsel that the statute could be declared unconstitutional because of the "or indecent" language. 134 Cong.Rec. H1696, H1700 (daily ed. April 19, 1988).

Although this Court is respectful of Congressional intent, our first responsibility must be to construe this statute to avoid constitutional difficulties, if it can be so limited. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296–97, 76 L.Ed. 598 (1932); *Carlin III,* 837 F.2d at 558. As such, we find that this Court will likely follow the lead of the Second Circuit in determining that "even if we incorrectly interpret congressional intent, the words 'or indecent' are separable so as to permit

them to be struck and the statute otherwise upheld." *Carlin III,* 837 F.2d at 561.

This Court finds that plaintiffs are likely to succeed on the merits of their claims concerning "indecent" expression. Accordingly, we grant the requested relief enjoining defendants' enforcement of the statute as it relates to "indecent" expression and permanently enjoining enforcement of this statute if such enforcement proceeding is based on conversations occurring while the ordered preliminary injunction is in effect.

*"Obscene" Expression*

■ This Court now turns to plaintiffs' claim that 47 U.S.C. § 223(b) unconstitutionally prohibits obscene interstate telephone conversations for commercial purposes between consenting adults. Plaintiffs claim that the sole purpose of the statute is to protect minors. They argue that since the statute burdens the First Amendment rights of adults, the regulation must be narrowly tailored to its intended purpose. Plaintiffs argue that the statute is not narrowly tailored because a less restrictive alternative, payment in advance by credit card, would effectively serve the statute's intended goal.

Plaintiffs have not shown a likelihood of success on the merits of this claim. A careful reading of the legislative history convinces this Court that, while one aim of the legislation is the protection of minors, the amended statute predominantly serves a broader intended purpose: "to prohibit transmissions of obscene and indecent material for commercial purposes by means of telephone."[2] 134 Cong.Rec. H1691 (daily ed. April 19, 1988) (remarks of Rep. Bliley, sponsor of the House bill).

Congressional intent is further evidenced by the effect of the amendment on the pre-existing statute. Prior to the amendment, the statute regulated obscene or in-

---

*Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

**2.** Plaintiffs suggest that Congress' regulation of live recordings unintentionally resulted from its limitations on recorded messages. However, we are convinced that the statute's application to both live and recorded messages was purposeful. Senator Helms, sponsor of the amend-

ment in the Senate, referred to live telephone calls on the floor of the Senate, 189 Cong.Rec. S16796 (daily ed. Dec. 1, 1987); and Senator Pell, supporting the legislation, stated that "[t]he objective is one we all agree on. We do not wish to see obscene and indecent phone calls made in any form." *189 Cong.Rec. S16796* (daily ed. Dec. 1, 1987).

348

decent telephone communication for commercial purposes "to any person under 18 years of age or to any other person without that person's consent." 47 U.S.C.A. § 223(b) (West Supp.1988). The amendment strikes the quoted language, effectively regulating *all* obscene or indecent telephone communications for commercial purposes.

When the statute is examined in view of its broader purpose, the issue becomes whether Congress can constitutionally prohibit obscene telephone conversations for commercial purposes between consenting adults. Plaintiffs are far from showing a likelihood of success on this issue. It has been "categorically settled by the [Supreme] Court, that obscene material is unprotected by the First Amendment." *Miller*, 413 U.S. at 23, 93 S.Ct. at 2614 (1972). Further,

> the Court has consistently rejected constitutional protection for obscene material outside the home ... [and held that] Congress could reasonably determine ... regulation to be necessary to effect permissible federal control of interstate commerce in obscene material, based ... on a legislatively determined risk of ultimate exposure to juveniles or to the public and the harm that exposure could cause.

*U.S. v. Orito*, 413 U.S. 139, 143–144, 93 S.Ct. 2674, 2677–78, 37 L.Ed.2d 513 (1972).

The Supreme Court has also rejected claims that privacy rights protect obscene materials, holding that obscene expression, whether for private use or public distribution is not so protected when introduced into channels of interstate commerce. *See Orito*, 413 U.S. at 142, 93 S.Ct. at 2677; *U.S. v. Thirty–Seven Photographs*, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822 (1970).

The Supreme Court has not limited Congressional power to regulate unprotected speech which has been introduced into interstate commerce. As such, this Court finds that plaintiffs have not demonstrated a likelihood of success on the merits, nor can it be maintained that the issues presented are sufficiently distinguishable from those previously decided by the Supreme Court to present fair ground for litigation. Therefore, we deny the requested relief as to "obscene" interstate telephone communications for commercial purposes.

## CONCLUSION

For the reasons stated above, this Court grants the requested relief in part. We preliminarily enjoin enforcement of 47 U.S.C. § 223(b) as it pertains to "indecent" speech and permanently enjoin enforcement of this statute if such enforcement proceeding is based on "indecent" conversations occurring while the preliminary injunction is in effect. All relief requested relating to "obscene" telephone conversations is denied.

It Is So Ordered.